**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| GUARANTEED RATE, INC., | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) Civil Action No. |
| v. | ) |
| | ) Judge: _____ |
| HOLZMEISTER GROUP, LLC, PATRICK | ) |
| SCOTT HOLZ-MEISTER, PRISTINE MEDIA | ) |
| GROUP LLC, and GRAHAM GOCHNEAUR, | ) |
| | ) |
| *Defendants.* | ) |
| | ) |

## COMPLAINT

Plaintiff Guaranteed Rate, Inc. ("Plaintiff" or "Guaranteed Rate"), by and through its undersigned counsel, brings this Complaint against Defendants Patrick Scott Holz-Meister ("Holz-Meister"), Holzmeister Group, LLC (with Holz-Meister, the "Holzmeister Defendants"), Graham Gochneaur ("Gochneaur"), Pristine Media Group LLC (with Gochneaur, the "Pristine Defendants"). All defendants will be referred to collectively as the "Defendants."

### NATURE OF THE ACTION

1.     Guaranteed Rate brings this action against Defendants for trademark infringement and false advertising in connection with a customer lead generation scheme utilizing intentionally false advertising and infringing Guaranteed Rate's registered trademarks.  For over 20 years, Guaranteed Rate has been known by its ubiquitous "Guaranteed Rate" with a downward red arrow. An example of one of Guaranteed Rate's registered marks is set forth below.



2.     Defendants have taken Guaranteed Rate's marks, which represent Guaranteed Rate's reputation as a leader in the mortgage-related goods and services industry, and used them in lead generation marketing schemes to deceptively lure Guaranteed Rate's customers into a misleading sales funnel for services from other mortgage service providers.  Defendants' clear and obvious infringement is demonstrated by Defendants' use of the following three logos, the first two used by the Holzmeister Defendants and the third by the Pristine Defendants:







Defendants included these graphics in nearly identical email-lead generation campaigns with the intent to confuse, deceive and lure Guaranteed Rate's customers away from doing business with Guaranteed Rate.

3.     Defendants' bait-and-switch scheme depends on the improper use of Guaranteed Rate's trademarks to deceive customers into thinking that Guaranteed Rate is offering a refinancing of the customer's mortgage on favorable terms.  Defendants' marketing materials also contain false and misleading information designed to create the false impression that fictitious

companies masquerading as affiliates of Guaranteed Rate are *bona fide* mortgage companies, going so far as to include false and deceptive Nationwide Multistate Licensing System ("NMLS") numbers, erroneous references to Federal Housing Administration ("FHA") Programs, and misleading claims of being a "fair housing lender."  Particularly, the NMLS is the system of record for non-depository, financial services licensing, or registration in participating state agencies regarding the formal issuance, renewal, tracking and maintenance of licensure.  The NMLS began operations in 2008 in part to enhance consumer protections by providing visibility into the state licensure of non-banks, which include mortgage lenders, mortgage brokers, and mortgage loan originators.  Using an imitation NMLS number falsely implies to any unwitting consumer that an organization is somehow endorsed or licensed by the state.

4.    These deceptive and unfair tactics violate the Lanham Act's prohibition on false advertising and trademark infringement, as well as Illinois consumer protection and advertising laws.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

6.    This Court has supplemental jurisdiction over the Illinois state law claims under 28 U.S.C. § 1367.

7.    This Court has personal jurisdiction over Defendants because they have engaged in acts or omissions within the State of Illinois causing injury, have engaged in acts or omissions outside of Illinois causing injury within the State, have provided services used within this State in the ordinary course of trade, or have otherwise made or established contacts with this State sufficient to permit the exercise of personal jurisdiction. Upon information and belief, Defendants engage in continuous and systematic contact with and purposefully direct acts complained of

herein toward Illinois and this judicial district. Therefore, personal jurisdiction over Defendants is proper pursuant to 735 ILCS § 5/2-209(a)(1) and 735 ILCS § 5/2-209(b)(4).

8.  Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action arose in this judicial district.

## PARTIES

9.  Guaranteed Rate is a corporation organized and existing under the laws of the State of Delaware, with its headquarters and principal place of business located at 3940 North Ravenswood Avenue in Chicago, Illinois. Guaranteed Rate is in the business of originating, closing, and selling mortgage loans and related products, and is one of the largest retail mortgage lenders in the United States. Guaranteed Rate is a citizen of the State of Illinois.

10.  Holzmeister Group LLC is a limited liability corporation organized under the laws of South Carolina. It is owned and controlled by Patrick Scott Holz-Meister. Upon information and belief, Holzmeister Group LLC is located at 413 Baycreek Dr., Charleston, South Carolina 29414.

11.  Patrick Scott Holz-Meister is an individual who is a resident of South Carolina. Upon information and belief, Holz-Meister is the sole owner of Holzmeister Group LLC and directs and controls all of the activities of this entity. Patrick Scott Holz-Meister is located at 413 Baycreek Dr., Charleston, South Carolina 29414.

12.  Pristine Media Group LLC is a limited liability corporation organized under the laws of Texas. It is owned and controlled by Graham Gochneaur. Upon information and belief, Pristine Media Group LLC is located at 4305 Windsor Centre Trail, Flower Mound, Texas 75028.

13.  Graham Gochneaur is an individual who is a resident of Texas. Upon information and belief, Gochneaur is the sole owner of Pristine Media Group LLC, and directs and controls all

4

of the activities of this entity. Upon information and belief, Graham Gochneaur is located at 235 Highland Knoll, Lewisville, TX 75077.

## FACTUAL BACKGROUND

### *Guaranteed Rate's Success in the Mortgage Industry*

14.     For over 20 years, Guaranteed Rate has achieved tremendous success in the mortgage industry by establishing a strong reputation for providing valuable mortgage products and services to its customers.

15.     In addition to being one of the largest retail mortgage lenders in the United States, Guaranteed Rate has earned numerous awards and broad recognition for its outstanding products and services, which include but are not limited to:

- Guaranteed Rate was recognized as one of the most successful private companies in the United States for five consecutive years by Inc. Magazine;

- Guaranteed Rate was named a top private U.S. job creator by Inc. Magazine;

- Guaranteed Rate ranked as a top workplace by the Chicago Tribune in 2012, 2013, 2014, 2015, 2016, 2017 and 2018;

- Guaranteed Rate was named a Top Lender by Chicago Agent Magazine in 2016, 2017 and 2018;

- Guaranteed Rate's founder and Chief Executive Officer, Victor Ciardelli, III, was named an Ernst & Young Entrepreneur of the Year Award winner in 2012;

- Mr. Ciardelli was also named CEO of the Year by Mortgage Executive Magazine and the CityLights Awards in 2014, and was named to MPA Magazine's "Hot 100" list of the most influential people in the mortgage industry from 2013 to 2018;

5

- Guaranteed Rate received the American Business Award for digital mortgage technology in 2016;

- In 2020, Guaranteed Rate had three of the top 10 mortgage originators in the United States and had the most top 100 loan officers nine years running, according to the Scotsman Guide, a key industry publication;

- Guaranteed Rate was named Top Lender for Online Service for 2018 by U.S. News & World Report;

- Guaranteed Rate has earned accolades from the *HousingWire*'s 2020 Tech100 award for the company's industry-leading FlashClose $^{SM}$ technology;

- Guaranteed Rate was ranked third in the United States in the Scotsman Guide's Top Retail Mortgage Lenders 2020;

- Guaranteed Rate has a Net Promoter Score – which is a metric in customer experience programs that measures the loyalty of customers to a company – that is more than twice the financial industry average;

- Guaranteed Rate was recognized as a Best Online Mortgage Lender, Best Mortgage Lender for VA Loans, and Best Conventional Mortgage Lender by Nerdwallet; and

- Guaranteed Rate was recognized as Top Mortgage Employer by National Mortgage Professionals Magazine.

***Guaranteed Rate's Registered Trademarks***

16.    Guaranteed Rate is the owner of several U.S. trademark registrations containing downward arrows covering various mortgage-related goods and services, including Registration Nos. 6269012, 5754345, 5652658, 3144843 and 5694346 (the "Trademarks").

17.     In its Trademarks, Guaranteed Rate consistently and almost exclusively depicts a downward arrow in red and has been doing so since at least as early as 2000.  An example of one of Guaranteed Rate's Trademarks is set forth below.



***Holzmeister Defendants Infringe Guaranteed Rate's Trademark Rights***

18.     In October 2020, Guaranteed Rate became aware that one of its customers had received an email displaying a letter with the following letterhead:



from a Rhonda Doherty, Direct Compliance Coordinator, displaying the following signature block:

**Rhonda Doherty**
Direct Compliance Coordinator
Guaranteed Best Rate®
www.guaranteed-best-rate.com

19.     The email indicated that the Guaranteed Rate customer was eligible to refinance his loan with "Guaranteed Best Rate" under an "Equity-One Refinance Program." *See* Exhibit ("Ex.") 1 (the "October 2020 Email").  Guaranteed Rate did not create, authorize, or otherwise approve the October 2020 Email.  The October 2020 Email was sent to at least one Guaranteed Rate customer who resides in the State of Illinois and in this District.

20.     The link provided by the offer led directly to a website property owned at times by LeadPoint Inc. ("LeadPoint") or, at other times, by Wisdom Companies, LLC ("Wisdom"). Likewise, clicking the URL www.guaranteed-best-rate.com led to a website property owned at

7

times by LeadPoint or, at other times, by Wisdom. In both instances, a sales funnel was presented which required the customer to answer several questions about the customer's mortgage or refinancing needs.  At the end of the sales funnel, the customer was offered several options for mortgage refinancing that were in no way affiliated with Guaranteed Rate's products or services.

21.     The October 2020 Email was intended to, and did in fact, confuse Guaranteed Rate's customers.  The Guaranteed Rate customer who received the October 2020 Email contacted a Guaranteed Rate loan officer with whom he had previously worked to obtain a mortgage and asked:  "What's this all about?" *See* Ex. 1.

22.     Upon becoming aware of the October 2020 Email, Guaranteed Rate promptly sent a letter to Diana Leslie, Executive Vice-President at LeadPoint, in which Guaranteed Rate demanded that LeadPoint cease and desist the illegal use of Guaranteed Rate's Trademarks. LeadPoint did not respond to Guaranteed Rate's Letter.

23.     In late January 2021, Guaranteed Rate again became aware of a website, www.bestguaranteedrates.net, promoting itself through a customer lead generation email campaign unlawfully using Guaranteed Rate's Trademarks.  *See* Ex. 2 (the "January 2021 Email").

24.     The January 2021 Email used nearly the exact same format as the October 2020 Email, but this time with a different web address:



25.     The January 2021 Email claimed to be "with Guaranteed Rates®," "Best Guaranteed Rates," and/or "www.bestguaranteedrates.net."  *See id.*  Guaranteed Rate did not create, authorize, or otherwise approve the January 2021 Email.

26.     The January 2021 Email used a signature block that not only infringed Guaranteed

Rate's Trademarks, but also provided a false and deceptive "NSL" license number intended to be

confused for an NMLS registration number and falsely represented that the individual and

fictitious company in the signature block could provide loans through "Federal FHA Programs,"

which they cannot:

**Stacy Scott** | NSL #241753
Processing, Federal FHA Programs
**Best Guaranteed Rates®**
www.bestguaranteedrates.net

27.     The links in the January 2021 Email again led to a sales funnel that required

consumers to answer questions indicating their needs for mortgage-related products and services,

and then recommended providers of such products and services who are not in any way affiliated

with Guaranteed Rate.  *See* Ex. 3 (screen shots of sales funnel).

28.     The very first recommendation, described as a "Top Rated Partner," was LMB

Mortgage Service Inc. ("LMB"):



29.     The web property to which the domain www.bestguaranteedrates.net led was owned either by LMB or, alternatively at times, Wisdom.

30.     As with the October 2020 Email, the January 2021 Email was intended to, and did in fact, confuse Guaranteed Rate's customers.  The Guaranteed Rate customer who received the January 2021 Email contacted a Guaranteed Rate loan officer with whom he had previously worked to obtain a mortgage and asked:  "Should I refi now?  See below."  *See* Ex. 2.

31.     On January 27, 2021, promptly after becoming aware of the January 2021 Email, Guaranteed Rate sent a letter to the current Chief Executive Officer of LMB, Jeff Hughes. Guaranteed Rate's letter demanded that LMB cease and desist the illegal use of Guaranteed Rate's Trademarks to lure away Guaranteed Rate's customers.  Guaranteed Rate's letter also demanded that LMB identify the owners of the infringing website domains and any entities with which LMB partners or to which LMB provides information in connection with the infringing website domains.

32.     On January 29, 2021, LMB's counsel at Jones Day responded to Guaranteed Rate and alleged that Wisdom owned the website domain www.bestguaranteedrates.net.

33.     On February 9, 2021, Guaranteed Rate sent a letter to Wisdom in connection with the January 2021 Email and the nearly identical October 2020 Email.  In its letter, Guaranteed Rate demanded that Wisdom cease and desist the illegal use of Guaranteed Rate's Trademarks to lure away Guaranteed Rate's customers.  Guaranteed Rate's February 2021 letter also demanded that Wisdom identify any other party that Wisdom alleges owns the infringing websites and the mortgage lenders or service providers to whom Wisdom provided customer leads in connection the unlawful lead generation scheme.

34.     On February 10, 2021, Wisdom's founder and Partner, Mark McKendry, responded to Guaranteed Rate's February 2021 Letter and alleged that the infringing email was "placed by a

3rd party marketing partner" of Wisdom's, but not by Wisdom. On February 15, 2021, Mr. McKendry identified the third-party marketing partner as Holzmeister Group, LLC and provided the contact information of its principal, Patrick Scott Holz-Meister.

35.     On February 15, 2021, in a phone conversation, Holz-Meister immediately admitted to Guaranteed Rate that he was responsible for certain of the email campaigns that infringed on Guaranteed Rate's Trademarks. Specifically, Holz-Meister admitted that:

a.  He obtained and owned the domains bestguaranteedrates.net and www.guaranteed-best-rate.com.

b.  He created the email content in both the October 2020 and January 2021 Emails, and used that content in an email advertising campaign.

c.  He was solely responsible for the email content and the campaign, and did not get approval from LeadPoint, Wisdom, or LMB for either. He represented that the Holzmeister Defendants do not maintain an account with LMB, although they do have accounts with LeadPoint and Wisdom.

d.  He intentionally used the Guaranteed Rate trademarks, including the red downward arrow, to generate clicks.

e.  The misleading content referencing the FHA and "NSL #" was also designed to generate clicks.

f.  He sent out thousands of emails similar to the October 2020 Email and the January 2021 Email which infringed on Guaranteed Rate's Trademarks.

36.     Due to the above outlined activity, which Wisdom has informed Guaranteed Rate violates Wisdom's polices, Wisdom informed Guaranteed Rate that it suspended Holzmeister Defendants from operating on its platform.

*Holzmeister Defendants Misrepresent Their Services*

37.     In addition to violating Guaranteed Rate's trademark rights, Holzmeister Defendants' marketing materials used in connection with the unlawful lead generation scheme contain false and misleading information.

38.     The phrase "NSL #" is included in the signature block of Holzmeister Defendants' unlawful lead generation emails (*see e.g.,* Ex. 2):

**Stacy Scott** | NSL #241753
Processing, Federal FHA Programs
**Best Guaranteed Rates®**
www.bestguaranteedrates.net

39.     The inclusion of "NSL" is intended to, and does in fact, create the false impression that "Best Guaranteed Rates" and "www.bestguaranteedrates.net" are *bona fide* mortgage companies by suggesting that the individual in the signature block or the fictitious company Best Guaranteed Rates is registered with NMLS, which they are not.  The signature block also gives the impression that Best Guaranteed Rates or Ms. Scott is somehow affiliated with "Federal FHA Programs," which they are not.

40.     Holzmeister Defendants also falsely represent that they offer the same products and services as Guaranteed Rate, indicating that the customer can receive a favorable refinance with the same quality service they have come to expect from Guaranteed Rate.  Instead, Holzmeister Defendants' lead generation scheme directs Guaranteed Rate's customers into sales funnels offering refinance options from other lenders that are not affiliated with Guaranteed Rate.

41.     On information and belief, Holzmeister Defendants directed their infringing and false and misleading marketing materials to individuals across the country, including individuals in the State of Illinois who reside in this District.

***Pristine Defendants Infringe Guaranteed Rate's Trademark Rights***

42.     On March 10, 2021, Guaranteed Rate became aware of another email campaign that infringed on Guaranteed Rate's Trademarks.  *See* Ex. 4 (the "March 2021 Email"). This email appeared in an almost identical format as the October 2020 Email and the January 2021 Email, but utilized a slightly different infringing graphic:



43.     The March 2021 Email also featured a fake domain, www.guaranteedrates.online, for the fictional mortgage refinance company. *See id.* When the links within the email were clicked on, they led directly to a web property that was owned by LeadPoint. *See* Ex. 5 (screen capture of LeadPoint web property reached from email campaign link). This website took the unsuspecting customer through a sales funnel to collect information and suggest mortgage lender options that were unaffiliated with Guaranteed Rate.  Guaranteed Rate did not create, authorize, or otherwise approve the March 2021 Email.

44.     The March 2021 Email was intended to, and did in fact, confuse Guaranteed Rate's customers.  Indeed, the customer who received this email mistook it for an offer from Guaranteed Rate, as he emailed an employee of Guaranteed Rate asking: "How's my rate now? Do I have a better.optiob [sic] now?" Ex. 4.

45.     The next day, on March 11, 2021, Guaranteed Rate provided LeadPoint's President, Noah Staitman, with an example email from the infringing campaign and asked Mr. Straitman to provide information on who was responsible for the campaign.

46.     On March 12, 2021, Mr. Staitman advised Guaranteed Rate that the affiliate marketer, Digital Treetop, sent the infringing email campaign but that the infringing email itself was designed by the affiliate publisher, the Pristine Media Group LLC.

47.     On March 17, 2021 Gochneaur, who is the principal of Pristine Media Group LLC, admitted to Guaranteed Rate that Pristine Media Group LLC designed the infringing March 2021 Email campaign.  Gochneaur further admitted that he did not receive approval from LeadPoint for the infringing email.

48.     Gochneaur represented that the infringing March 2021 Email was sent to 23,186 recipients.

49.     Gochneaur attempted to blame another employee for the infringing email, but he refused to provide the name or contact information for such employee.  Upon information and belief, Gochneaur controls all of the activities of Pristine Media Group LLC, and was personally responsible for the infringing March 2021 Email.

***Pristine Defendants Misrepresent Their Services***

50.     In addition to violating Guaranteed Rate's trademark rights, Pristine Defendants' marketing materials used in connection with the unlawful lead generation scheme contain false and misleading information.

51.     The email template used in the March 2021 Email suggests that www.guaraateedrates.online is an *bona fide* mortgage company offering refinance services, which it is not.  The deception goes so far as to assert that the fictional company is an "equal housing lender":



(emphasis added). This representation is false because this company does not exist and therefore is not a lender at all. The false representation is a ruse to convince unsuspecting customers to enter a sales funnel, which collects their personal information under false pretenses.

52.     Pristine Defendants also falsely represent that they offer the same products and services as Guaranteed Rate, indicating that customers can receive a favorable refinance with the same quality service that customers have come to expect from Guaranteed Rate. Instead, Pristine Defendants' lead generation scheme directs Guaranteed Rate's customers into a sales funnel offering refinance options from other lenders that are not affiliated with Guaranteed Rate.

53.     On information and belief, Pristine Defendants directed their infringing and false and misleading marketing materials to individuals across the country, including individuals in the State of Illinois who reside in this District.

***Guaranteed Rate Is Harmed by Defendants' Conduct***

54.     Defendants' unlawful and deceptive lead generation scheme plays off of and ruins the goodwill of Guaranteed Rate.

55.     As demonstrated by emails from Guaranteed Rate's customers, those customers were actually confused by Defendants' unlawful marketing emails, believing that Guaranteed Rate was reaching out to them to offer to refinance their mortgages. *See* Ex. 1 (October 2020 customer email to Guaranteed Rate asking what the offer from Holzmeister Defendants is all about); *see also* Ex. 2 (January 2021 customer email to Guaranteed Rate forwarding email from Holzmeister

Defendants and asking if he should refinance); Ex. 4 (March 2021 customer email to Guaranteed Rate forwarding email from Pristine Defendants and asking about the new offered rate.)

56.     Additionally, Holzmeister Defendants' unlawful scheme and use of a false "NSL" number constitutes unlicensed activity that violates numerous laws, including, without limitation, (a) the federal Secure and Fair Enforcement for Mortgage Licensing Act of 2008 ("SAFE Act"), 12 CFR 1007.101, *et seq.*, which requires that federal and state mortgage origination licensing and registration be accomplished through a nationwide licensing and registration system (the NMLS), and (b) the federal Truth in Lending Act (Regulation Z), 12 CFR 1026.24(i)(4), *et seq.*, which makes it unlawful to impersonate a customer's current mortgage lender.  Pristine Defendants violate Regulation Z by generally impersonating Guaranteed Rate to lure away its customers.

57.     Further, based on Defendants' own admissions, it is clear that Defendants have knowledge of the unlawfulness of their actions.

**FIRST CAUSE OF ACTION**
**(Lanham Act § 32(a) Trademark Infringement - 15 U.S.C. § 1114)**

58.     Guaranteed Rate repeats and realleges by reference herein its allegations contained in the above paragraphs of this Complaint.

59.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of imitations of Guaranteed Rate's Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods and services.

60.     Guaranteed Rate is the owner of the Trademarks, which contain downward arrows covering various mortgage-related goods and services and include without limitation Registration Nos. 6269012, 5754345, 5652658, 3144843 and 5694346.

61.     Guaranteed Rate is the exclusive owner of the Trademarks. The United States Registrations for these Trademarks are in full force and effect.

62.     Consumers have come to expect the highest quality from Guaranteed Rate's products and services provided under the Trademarks.

63.     Guaranteed Rate never authorized Defendants to use or display the Trademarks in any manner or for any reason.

64.     Defendants have sold, offered to sell, marketed, distributed, and advertised products and services in connection with the Trademarks without Guaranteed Rate's permission.

65.     Defendants have knowledge of Guaranteed Rate's rights in the Trademarks, have willfully infringed the Trademarks, and, upon information and belief, are likely to do so again.

66.     Accordingly, Guaranteed Rate is entitled to, among other things, an order permanently enjoining and restraining Defendants from any further action infringing on Guaranteed Rate's Trademarks.

67.     Guaranteed Rate has suffered other harm as a direct and foreseeable consequence of Defendants' unlawful acts, as will be determined at trial.

## SECOND CAUSE OF ACTION
### (Lanham Act § Section 43(a) False Advertising - 15 U.S.C. § 1125(a))

68.     Guaranteed Rate repeats and realleges by reference herein its allegations contained in the above paragraphs of this Complaint.

69.     Defendants misrepresent that they offer certain mortgage-related products and services that are the same as those offered by Guaranteed Rate.  Defendants' lead generation scheme constitutes false advertising because it contains false and misleading representations and descriptions that are likely to mislead, or have misled, consumers about the nature, characteristics, and quality of Defendants' products or services and/or Guaranteed Rate's products or services. These misrepresentations are also likely to cause, or have caused, consumers to falsely believe,

among other things, that Defendants' services are the same as Guaranteed Rate's products or services, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

70.     Defendants have willfully, knowingly, and intentionally made false representations and descriptions of their products or services and Guaranteed Rate's products or services so as to deceive, mislead, and confuse consumers and the purchasing public into believing that, among other things, Defendants' products and services are the same as Guaranteed Rate's products and services.

71.     Defendants' false and/or misleadingly branded emails tend to deceive a substantial portion of Defendants' intended audience of potential purchasers and these statements have actually deceived consumers.

72.     Defendants' false and/or misleading statements are material in that they are likely to influence consumer purchasing decisions and/or describe an inherent quality or characteristic of the product.

73.     Defendants' products and services are sold in interstate commerce.

74.     By reason of Defendants' unlawful acts and practices, including the false and misleading statements set forth herein, Guaranteed Rate has suffered damage to its business, reputation and goodwill, and the loss of sales and profits Guaranteed Rate would have made but for Defendants' acts, in an amount to be determined at trial.

75.     Additionally, Defendants have received revenue in the form of commissions from customer leads, and in the form of sales of mortgage-related products and services caused by these false and misleading statements, in an amount to be determined at trial.

76.     The aforesaid acts and conduct of Defendants are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

77. Upon information and belief, Defendants are likely to engage in similar conduct in violation of Section 43(a) of the Lanham Act in the future.

78. Accordingly, Guaranteed Rate is entitled to, among other things, an order permanently enjoining and restraining Defendants from any further misleading and deceptive acts or practices.

79. Guaranteed Rate has suffered other harm as a direct and foreseeable consequence of Defendants' unlawful acts, as will be determined at trial.

**THIRD CAUSE OF ACTION**
**(Violation of Illinois Uniform Deceptive Trade Practices Act – §815 ILCS 510/2 et seq.)**

80. Guaranteed Rate repeats and incorporates by reference herein its allegations contained in the above paragraphs of this Complaint.

81. As set forth above, Defendants engaged in deceptive practices by falsifying the origin and nature of the products and services provided by misrepresenting that they were providing the products and services of Guaranteed Rate.

82. Defendants' activities are deceptive acts and practices because they offend established public policy and are immoral, unethical, unscrupulous, and substantially injurious to consumers.

83. By reason of, and as a direct and proximate result of, Defendants' deceptive acts and practices, Defendants have caused harm to unsuspecting customers and competitors in the mortgage-related products and services marketplace.

84. By reason of Defendants' unlawful acts and practices, Guaranteed Rate has suffered damage to its business, reputation and goodwill, and the loss of sales and profits Guaranteed Rate would have made but for Defendants' acts, in an amount to be determined at trial.

85.     Additionally, Defendants have received revenue in the form of customer leads or additional sales caused by their deceptive acts and practices, in an amount to be determined at trial.

86.     The aforesaid acts and conduct of Defendants are in violation of the Illinois Uniform Deceptive Trade Practices Act.

87.     Upon information and belief, Defendants are likely to engage in similar violations of the Illinois Uniform Deceptive Trade Practices Act in the future.

88.     Guaranteed Rate has suffered other harm as a direct and foreseeable consequence of Defendants' unlawful acts, as will be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Guaranteed Rate respectfully requests that this Court enter an order and judgment in favor of the Plaintiff and against Defendants, as follows:

(1)     Finding Defendants have violated Section 32(a) of the Lanham Act (15 U.S.C. § 1114), Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), and the Illinois Uniform Deceptive Trade Practices Act (§815 ILCS 510/1 et seq.);

(2)     Permanently enjoining, pursuant to the Court's powers under 15 U.S.C § 1116 and otherwise, Defendants from any further illegal use of Guaranteed Rate's Trademarks and misrepresentations that they provide the same services as Guaranteed Rate including, but not limited to, any further branded email campaigns utilizing Guaranteed Rate's Trademarks;

(3)     Declaring and ordering that this case is exceptional and that Guaranteed Rate is entitled to an award of reasonable attorney's fees and costs under 15 U.S.C. § 1117(a) or otherwise;

(4)     Awarding damages, pursuant to the Court's powers under 15 U.S.C  § 1117 and otherwise, in an amount to be determined at trial including, but not limited to, disgorgement of profits, corrective advertising, and attorney's fees and costs up to three times any actual damages;

(5)     Awarding pre-judgment and post-judgment interest, pursuant to the Court's powers under 28 U.S.C. 1961 and otherwise, and to the fullest extent allowable at law or in equity, on all damages; and

(6)     Granting such other and further relief as this Court deems just and proper.

DATED:  April 5, 2021                    Respectfully submitted,


                                         By: /s/          *Rachel Niewoehner*
                                               Rachel Niewoehner


                                         Rachel B. Niewoehner
                                         Holly A. Harrison
                                         Jason M. Fitterer
                                         Harrison Law LLC
                                         141 West Jackson Blvd
                                         Suite 2055
                                         Chicago, IL 60604
                                         Telephone:  (312) 638-8776
                                         Fax:  (312) 638-8793
                                         Email: rachelniewoehner@hlawllc.com
                                         Email: hollyharrison@hlawllc.com
                                         Email: jasonfitterer@hlawllc.com


                                         Roger A. Colaizzi (*pro hac vice* to be submitted)
                                         William C. Lawrence (*pro hac vice* to be submitted)
                                         VENABLE LLP
                                         600 Massachusetts Avenue, NW
                                         Washington, D.C. 20001
                                         T: (202) 344-4000
                                         F: (202) 344-8300
                                         (202) 344-8051 (Colaizzi direct dial)
                                         (202) 344-4300 (Lawrence direct dial)
                                         RColaizzi@Venable.com
                                         WCLawrence@Venable.com


                                         *Counsel for Plaintiff Guaranteed Rate, Inc.*

22